GEORGE VAN RIPER, complainant, and ROGER CLAXTON and wife, defendants.

1. Where the defence set up by the answer is of a character to require the complainant to make a new issue in order to meet it, he will not be permitted to do so without amending his bill, and adapting it to the case upon which he expects to sustain himself.

2. The consideration of a mortgage was for a loan of money; and the defendant insists that the money was not advanced pursuant to the agreement, and the complainant meets that issue, but in doing so, attempts to show that if the money was not advanced in pursuance of the letter of the agreement, the advancement was sanctioned by the defendant.

3. *Held*, that as the whole case was before the Chancellor upon the proofs made by the defendant himself, it would be too technical to turn the complainant out of court. If the defendant be entitled to the benefit of the objection, the court has the power, and has frequently exercised it, of allowing a bill to be so amended as to correspond with the case, even after proof taken.

4. This is a case which would warrant the exercise of the power, if such a course were necessary.

This cause was argued at Newark, December 8th, 1852, on bill, answer, replication and proofs. The opinion was delivered February Term, 1853. The pleadings and nature of the case upon the proof, sufficiently appear in the opinion of the Chancellor.

*A. S. Pennington,* for complainant.

*D. Barkalow,* for defendant.

THE CHANCELLOR. The bill is an ordinary foreclosure bill. It alleges that the mortgage was given and executed by the defendants to the complainant, to secure the payment of a bond in the penal sum of sixteen hundred dollars, conditioned to pay eight hundred dollars, given by Claxton, the defendant, to the complainant, and that the consideration of the bond was money loaned by the complainant to Claxton.

The defendant Claxton admits the due execution of the bond and mortgage, and sets up this defence : He denies that the complainant loaned him any money, but alleges that the bond and mortgage were executed upon the following agreement : That he, Claxton, being desirous of erecting a dwelling-house on the lot of land embraced in the mortgage, entered into a written agreement with one Garrison to build it ; that he was induced to let Garrison have the job of building the house on the promise of the complainant that if he would do so the complainant would loan him the money ; that it was agreed between the complainant, the defendant and Garrison, that the complainant should advance the money for Claxton to Garrison for building the house, as follows : One hundred dollars on signing the building contract, and the balance from time to time as the building should progres, on receiving the order of George W. Hughes, who had the supervision of the work ; that of the eight hundred dollars, the complainant should pay Hughes one hundred and nineteen dollars, which sum Hughes had advanced for Claxton as the purchase money for the lot; the balance, of six hundred and eighty-one dollars, to be paid on the building contract, as before stated.

The answer further states that when the contract was signed the complainant paid Garrison, on the order of Hughes, one hundred and twenty-four dollars on the contract ; but that Hughes has not at any time ordered or directed, or in any way assented to, the payment of any other or further sum of money on account of the contract, or for the defendant Claxton, or on any account whatever.

The answer further alleges that Garrison failed to use such materials and do the work in the manner as by the contract it was stipulated, and that in consequence of such default the defendant has been greatly damaged ; that Claxton failed to pay for the work done and materials furnished, and that by reason of such failure claims against Garrison, for such work and materials, were filed under the lien law in the county clerk's office, and are liens upon the premises; that the reason why Garrison suffered the liens to be estab-

lished, was because he was indebted to Van Riper, and instead of Van Riper's paying him the money, and thus enabling him by putting him in funds to pay for the work and materials, Van Riper credited him on the old debt.

It is first insisted, on behalf of the defendant, that he has proved clearly that no money was advanced to him by the complainant at the time of the execution of the mortgage, and that the money, if advanced at all, was on the special agreement, and that the complainant, therefore, cannot recover upon the case made by the bill. The bill simply charges a loan of money, and the execution of the bond and mortgage to secure its payment.

The case of *Hopper* v. *Scisco*, 1 *Hal. Ch. R.* 345, is relied upon to sustain this position. In that case, the complainant filed his bill in the form of an ordinary foreclosure bill, and set out the consideration of the debt secured by his mortgage to·be the loan of money. The defendant set up and proved that the mortgage was given as collateral security for certain judgments, obtained by different persons against Scisco, which had been assigned to the complainant, and which, after the mortgage was given, were satisfied by sales on executions. The complainant then attempted to sustain his case simply by showing that at different times he had paid to the sheriff of the county various sums of money on executions against Scisco in the sheriff's hands. But the Chancellor very properly decided that the defendant was not called upon to meet such a case; that it was a surprise on the defendant, and that the matters attempted to be set up by the complainant were not at issue between the parties.

In the case before us, the substance of the agreement upon which the mortgage was executed was, that the complainant should loan the defendant eight hundred dollars, and, instead of advancing all the money upon the delivery of the mortgage, it should be advanced as the defendant should demand it, or upon the demand of a person named as his agent for that purpose. Whatever money was so ad-

Van Riper v. Claxton and wife.

vanced, was a loan from the complainant to the defendant, which this mortgage was executed to secure.

The defendant alleges that the money was not all advanced according to the terms of the agreement, and that, in equity, it should stand for so much only as was advanced in strict compliance with the agreement.

It would, perhaps, have been most prudent for the complainant to have amended his bill, after the coming in of the answer. The defendant might have shaped his course so as to have compelled the complainant to do so. But as his defence, the defendant has spread out, in his answer, all the matters at issue between the parties. He has brought all the matters in controversy between them, by proof, before the court. He cannot say he is surprised. The whole case is before me. There is no difficulty, upon the pleadings and proofs, in deciding, without any embarrassment to either party, their respective rights. There is no good reason, therefore, why I should now dismiss this bill, and leave the matters open for further litigation.

Where the defence set up by the answer is of a character to require the complainant to make a new issue, in order to meet it, he will not be permitted to so without amending his bill, and adapting it to the case upon which he expects to sustain himself. In the case of *James* v. *McKernon et al.*, 6 *Johns. Rep.* 543, the defendants set up, among other matters, an agreement, upon which they relied. The complainant was not permitted to show that the agreement was fraudulent, because the question of fraud was not put in issue by the pleadings.

In this case, the consideration of the mortgage was, substantially, and, I think, technically, too, for a loan of money. That the money was not paid down *instanter*, on the delivery of the mortgage, but was advanced in several sums afterwards, upon the order of the mortgagee, or his agent, to a third person, does not alter its character, as a loan from the complainant to the defendant. The defendant insists, the money was not advanced pursuant to the agreement, and the complainant meets that issue. The only difficulty is that, in

meeting that issue, the complainant attempts to show that if the money was not advanced in pursuance of the letter of the agreement, the advancement was sanctioned by the defendant.

But, as I stated, the whole case is before me upon the proofs made by the defendant himself. I think, under such circumstances, it would be too technical to turn the plaintiff out of court. Indeed, I would not turn the complainant out of court, if I was of opinion that the defendant is entitled to the benefit of the objection. The court has the power, and has frequently exercised it, of allowing a bill to be so amended as to correspond with the case, even after proofs taken. It is a power which should be exercised discreetly. I think this is a case where the due administration of justice would warrant it, if such a course was necessary.

What are the merits of the case? The defendant admits that one hundred and twenty-four dollars were paid down when the mortgage was delivered, and as to this amount, there is no difficulty. The further payment of $557 was to be made to Garrison, on the orders of Hughes, named as the agent for that purpose. After the building was partially finished, Garrison called for another payment on account, and it was made to him by the complainant. Hughes, sworn on the part of the complainant, says: "I also verbally authorized Mr. Van Riper, I think, to make the second payment, but am not certain, and cannot say whether I did or not." He says, further, he gave him no order to make it, but he afterwards told him if it was right, he was perfectly satisfied. When Garrison said he had completed the building, the complainant advanced him the balance of the money, making, in all, $681, being the full amount which, by the agreement, he was to advance to Garrison. This last payment, Hughes swears, was made without his order, and in violation of his express orders to Mr. Van Riper.

The question is whether, in equity, the mortgage should be declared as a valid, subsisting security for the whole of the money advanced, or for such part only as was in conformity with the agreement.

The defendant's house has been built with this money, and he is now in the enjoyment of it. There is no proof that the payments were not paid in good faith by the complainant. The allegation in the answer, that the complainant was indebted to Garrison, and gave a credit on this indebtedness, instead of paying in money, is not proved. It is inequitable that he should enjoy the benefit of this money, on the technical ground merely that Hughes did not order it paid, and not be held liable for it as a debt. In resisting payment, the defendant places his equity, first, on the ground that Garrison did not build the house according to the contract. There was some difficulty between Claxton and Garrison as to the work, but from the evidence, it would appear the matter in difference was not of much magnitude. Hughes says, " I wanted the work altered so as to conform to the contract; some portion of it was altered as I required, but I believe not all."

But it appears that Claxton prosecuted Garrison on this contract, for not building and finishing the house according to its terms, and that he recovered in that suit $10 damages.

On the trial, Claxton offered in evidence a receipt of Garrison to the complainant for $681, being the amount of the payments which the complainant had paid to Garrison, and which he now claims on his mortgage. He has thus had the full benefit of the money paid, and has sanctioned the payments in the fullest manner, and the mortgage having been intended and executed to secure the money which the complainant should advance to Garrison, it should be held, in equity, a lien upon this property which ought to be satisfied.

But the defendant further insists that the liens filed in the clerk's office are encumbrances upon the property, and have become such in consequence of the conduct of the complainant.

It is unnecessary for me to determine whether these liens filed are valid encumbrances or not.

I cannot see how the complainant is to be held responsible for any such consequences. If the complainant had not

advanced the money to Garrison, there might be some propriety in charging him with the default of Garrison, it being his duty to provide Garrison the means. If his failure to do so had embarrassed Garrison, so as to prevent his paying for the materials for the building, there might be some just cause of complaint. But he was in no way bound for the honesty and fidelity of Garrison, and I do not think he is to be held responsible for his misconduct.

A reference must be taken to a master to take an account of the payments made by the complainant to Garrison, on account of the defendant, and to allow interest on such payments, from the time they were respectively made. The complainant is entitled to nothing more on his mortgage, except the sum paid Hughes, and interest upon it, which is to be included in the account.